838 So.2d 792 (2002)
STATE of Louisiana BOARD OF ETHICS
v.
Corbett OURSO, Jr.
No. 2001CA1417.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
Writ. Granted October 14, 2002.
R. Gray Sexton, Maris L. McCrory, Jennifer G. Magness, Baton Rouge, for Plaintiff-Appellant *793 State of Louisiana, Board of Ethics.
John O. Braud, Independence, for Defendant-Appellee Corbett Ourso, Jr.
Before: WHIPPLE, FOGG, and GUIDRY, JJ.
FOGG, J.
The salient issue raised on appeal in this action by the State of Louisiana, Board of Ethics to investigate the campaign finances of a political candidate is whether the term provided by LSA-R.S. 18:1511.11 is prescriptive or peremptive. For the following reasons, we affirm the trial court's determination that the statute is peremptive.
Corbett Ourso, Jr. ran unsuccessfully for the office of District Court Judge, 21st Judicial District Court, Division G in the October 3, 1998 primary election and in the November 3, 1998 general election. Within one year of filing his campaign disclosures, Ourso executed the following document:
I, Corbett Ourso, Jr., do hereby acknowledge the following:
 my campaign for the October 1998 primary election has been subject to investigation by the Board of Ethics, acting as the Supervisory Committee on Campaign Finance, for the possible receipt of excessive loans;
 the Board of Ethics may take enforcement action for this alleged violation by virtue of the filing of a civil lawsuit for penalties;
 I have been offered the opportunity to enter into a consent agreement with the Board concerning the alleged violation;
 I have asked the staff of the Board for the opportunity to appear before the Board at its October 14, 1999 meeting in order to request that any consent opinion reached allow me to seek judicial review of that opinion; and
 I understand that the staff of the Board is opposed to allowing judicial review of the consent opinion.
In consideration of the foregoing, and to preserve my opportunity to appear before the Board at its October 14, 1999 meeting, I do hereby agree to renounce, waive, and abandon any defense related to prescription or limitation of actions, particularly as to the provisions of R.S. 18:1511.11, that may have already accrued or which may accrue before November 19, 1999.
On November 19, 1999, more than one year after Ourso filed his campaign disclosures, the Board of Ethics filed a rule to show cause, asserting that Ourso violated LSA-R.S. 18:1505.2(H) by exceeding the $2,500 per person contribution limit for both primary and general elections and seeking civil penalties pursuant to LSA-R.S. 18:1505.2(J). On June 13, 2000, Ourso responded by filing peremptory exceptions, asserting the action was either prescribed or perempted under LSA-R.S. 18:1511.11. On May 1, 2001, the trial court rendered judgment in favor of Ourso, sustaining the exception of peremption and dismissing the action of the Board of Ethics. This appeal followed.
Subsequently, the trial court wrote reasons for judgment which, by supplementation of the record, were added to the record on appeal. The Board of Ethics then filed with this court a motion to strike the trial court's written reasons for judgment, asserting they were filed more than sixty days after the order of appeal was granted. The issue raised on appeal is solely the interpretation of a statute; issues of law are reviewed by this court with no deference afforded to the trial court. *794 Considering the absence of weight given the trial court's reasoning, we find the appellant's motion is moot. Therefore, we deny the motion.
On appeal, the Board of Ethics asserts that the trial court erred in determining that LSA-R.S. 18:1511.11 is peremptive rather than prescriptive and that the prescriptive period set forth in the statute was interrupted by the execution of the above waiver. LSA-R.S. 18:1511.11 provides:
§ 1511.11. Precedence of actions; limitations of actions
A. Any action brought under the provisions of this Chapter shall be advanced on the docket of the district court in which filed, and shall take precedence over and be considered in advance of all other actions other than actions brought under this Chapter.
B. Actions for violation of this Chapter must be commenced before three years have elapsed from the date of the violation or, if the violation is contained in a report, before one year has elapsed from filing of the relevant report.
In Reeder v. North, 97-0239, p. 12-13 (La.10/21/97), 701 So.2d 1291, 1298, quoting Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 723 (La.1986), the supreme court discussed the difference between peremption and prescription:
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ. Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and contra non valentem applies an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.
In determining whether a statute is prescriptive or preemptive the courts have often stated that a statute is preemptive when it both creates the right of action and stipulates the time within which that right may be executed. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La. 1986); Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953); Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (La.1900). However, the specification of a time limit for bringing an action in the same statute that created the right of action is not the sole test of peremption as distinguished from prescription; "preemption, as differentiated from prescription, is a matter to be determined by legislative intent revealed by the statute in its entirety, including the purpose sought to be achieved." Guidry v. Theriot, 377 So.2d 319, 325 (La. 1979). Furthermore, in Pounds v. Schori, 377 So.2d 1195 (La.1979), the court stated that the public policy behind a statute is a significant factor in distinguishing peremption from prescription.
Most recently in the case of State through Div. of Admin. v. Mcinnis Bros. Const., 97-0742 (La.10/21/97), 701 So.2d 937, 942, the supreme court summarized the test employed in distinguishing the doctrines of prescription and preemption as follows:
We conclude that "it is the legislative purpose sought to be achieved by a particular limitation period which has been found to be one of the most significant factors in distinguishing peremption *795 from prescription," Hebert, 486 So.2d at 724, and, although the presence or absence of certain words may be beneficial to a court in its inquiry into the legislature's intent, the use or nonuse of certain words, while relevant, should not be the determinative factor in the analysis.
The legislative intent and the public policy considered in promulgating Campaign Finance Disclosure Act, LSA-R.S. 11:1481 et seq., are reflected in the statement of its purpose set forth in LSA-R.S. 18:1482. That provision provides that "[t]he legislature recognizes that the effectiveness of representative government is dependent upon a knowledgeable electorate and the confidence of the electorate in their public officials." The timeliness of actions against public officials is critical to the goal of maintaining an effective representative government based on a knowledgeable electorate. An extension of the delay for instituting actions under this legislation would hinder or defeat this goal. Therefore, the intent of the legislature, as well as public policy, dictate a conclusion that the statute is peremptive rather than prescriptive.
Furthermore, as discussed earlier, peremption statutes generally create a right of action and stipulate the delay during which the right may be exercised. The Campaign Finance Disclosure Act was enacted by Acts 1980, No. 786, effective January 1, 1981. Prohibited practices, limitations and penalties for non-compliance were set forth in Part V of the statute; prohibitions and limitations on campaign contributions and expenditures were set forth in LSA-R.S. 18:1505.2. Therefore, the language of the statute both creates a right of action and stipulates the delay during which the right must be exercised, meeting the requirements of Guillory and reflecting an intent by the legislature to set forth a precise time period for the filing of suit against a candidate by the Board of Ethics.
In sum, considering the plain language of the statute, the clear legislative intent and public policy considerations on which this statute was based, we conclude that the time period set forth in LSA-R.S. 18:1511.11 is peremptive.
For the foregoing reasons, the judgment of the trial court is affirmed and the appellant's motion is denied. Costs in the sum of $371.00 are assessed against the State of Louisiana Board of Ethics.
MOTION DENIED; JUDGMENT AFFIRMED.
WHIPPLE, J., dissents for reasons assigned.
WHIPPLE, J., dissenting.
As the Board correctly argues:
The conclusion that the time period contained in R.S. 18:1511.11 is preemptive not only frustrates the public policy behind the CFDA, but also adversely affects candidates and elected officials subject to the restrictions contained in the CFDA. If faced with a short peremptive period, the Board would have no choice but to hurriedly investigate alleged violations of the CFDA, which often times are prompted by political adversaries of the candidate or elected official, and file a civil suit against the candidate or elected official alleging various violations of the CFDA.
In my view, the approach taken by the majority under the particular (and egregious) facts of this case serves only to frustrate the purpose of the Act: to promote public confidence of the electorate in the election of public officials.
Thus, I respectfully dissent.